## BACON, STATE ENGINEER, v. HARRIS, DISTRICT JUDGE.

No. 4657.   Decided January 14, 1928.   (263 P. 930.)

*Harvey H. Cluff*, Atty. Gen., for plaintiff.

*J. Wesley Horsley*, of Brigham City, for defendant.

*Ray & Rawlins, Cheney, Jensen & Stephens*, and *Wilson & Barnes*, all of Salt Lake City, amici curiae.

THURMAN, C. J.

This action was instituted by the state engineer of Utah, as plaintiff, for a writ of mandate to compel the defendant, as judge of the First judicial district court, to enter a

judgment and decree allowing costs against the parties interested in a certain cause pending in said court, and also to compel said defendant to direct and authorize the state engineer to apportion said costs and make the same a judgment against said parties until the same is fully and finally paid. Plaintiff prays for other relief and costs.

The action in the district court in which it alleged the costs were incurred was instituted and carried to a final decree, except as to costs, under and in pursuance of the provisions of chapter 67, Sess. Laws 1919.

The petition of the plaintiff herein sets forth in detail the various steps taken in the district court in said action down to the entering of the decree thereon, all of which appears to have been in strict compliance with the provisions of said chapter 67. The petition then shows that plaintiff presented to the defendant, as judge of said district court, a petition and report of his proceedings in said cause, and the items of expense he had necessarily incurred in the action, amounting in the aggregate to $250.30, and prayed the court for an order assessing the costs of adjudication against the defendants in said cause, with instructions to the state engineer to prorate said costs among the water users, parties to said action. Plaintiff also prayed that the state engineer be instructed to notify each of said water users of his prorata share of said costs, and that the clerk of said court enter judgment for said amount. Plaintiff prayed for other relief, not necessary to state in this connection. The petition further shows that the defendant, judge of said court, after a hearing on said petition, and objections thereto, refused to grant said orders, or any of them, for the reason, as stated by him, that he had no power or authority to order costs or to require the parties interested in said cause to pay any portion thereof.

An alternative writ was issued and return made thereon. Defendant filed a general demurrer to the petition. A hear-

ing was had on the issues presented and briefs filed by the respective parties. The sole question to be determined is, Was the defendant, as judge of the district court, authorized to assess costs against the water users, parties to the action, and enter judgment or decree therefor? It is contended by the defendant here that neither chapter 67, Sess. Laws 1919, nor any law now in force, authorizes the assessment of costs in such cases or the entry of judgment therefor.

Chapter 67 referred to consists of 80 sections and purports to present a comprehensive plan for the adjudication of water rights pertaining to any stream or water course within the state. It contemplates that upon the application of a certain number or proportion of the water users from any stream or water source to the state engineer for the determination of their water rights, he shall commence an action in the district court and make all the water users parties thereto. The nature of the action, the requirements thereof, and the various steps to be taken to reach a final decree, are set forth in sections 20 to 38, inclusive. It is not essential to describe the proceeding in this statement of the case. It will be found, however, that it is a special procedure almost entirely outside the ordinary course of law. For example, it provides that in the first instance the state engineer shall formulate a proposed determination of the water rights involved which shall have the effect of a decree until the court shall instruct him otherwise. If no contest is filed the court must enter judgment in accordance with the proposed determination by the state engineer. If a contest is filed the matter must be heard and determined by the court. The right of appeal to the Supreme Court is allowed on both questions of law and fact, as in equity cases. No provision is made for the assessment of costs or the entry of judgment therefor. The sections above referred to purport to be a special code of procedure for the adjudication of water rights pertaining to a stream or water course,

complete within itself, until the case reaches the Supreme Court on appeal.

The plaintiff here admits that chapter 67, supra, confers no express authority upon the court to enter judgment for costs in this class of cases, but insists that such authority may be implied from previous legislation and from language used in appropriation bills in the Session Laws of 1919 and subsequent sessions. It appears that the Legislature of 1919 (Sess. Laws, p. 384) made an appropriation to the state engineer in language as follows: "For revolving fund for making investigations as provided by Senate bill No. 113, $20,000." Senate bill 113, when enacted, became chapter 67 of the Session Laws of 1919. In 1921 an appropriation was made to the state engineer as follows (Laws 1921, p. 406) : "For revolving fund to carry out provisions of chapter 67 Laws of 1919, $10,000." In 1923 (Laws 1923, p. 195) the language employed was, "To the State Engineer's revolving fund, $20,000." And finally, in 1925 (Laws 1925, pp. 290, 293) it is stated that the Legislature appropriated to the state engineer's "revolving fund" two sums, one as a deficit allowed by the state board of examiners for the sum of $14,098.12 and the other for $15,000. Just what is meant by the term "revolving fund" is not explained in any law in force at the time the appropriations were made. The term seems to imply some sort of recoupment or return of the money so appropriated; but as to the person or persons by whom the recoupment shall be made, or from whom the return is expected, there is no law in force which affords an explanation. It is possible that the term "revolving fund" had its origin in the Session Laws 1911, c. 3, § 1285, which, in part, reads:

"For the purpose of advancing the money required for the expenses of district judges, compensation and expenses for referees and compensation and expenses of stenographers, as provided in sections 1272 to 1285, inclusive, Compiled Laws of Utah, 1907, there is hereby appropriated and set apart from any moneys in the general fund in the state treasury the sum of $8,000, to be known as 'adjudication of

water rights fund' which shall be a permanent fund and which shall be used only for the payment of expenses as provided herein.

"The sums allowed by the state board of examiners, upon certificates of the proper district judge to the state auditor, for expenses and services paid from the 'adjudication of water rights fund' as herein provided, shall at the conclusion of a water adjudication, be certified by the state auditor to the judge and clerk of the court in which said adjudication has been made and the same shall constitute a part of the costs and disbursements in said cause. The court, at the time of entry of final judgment in said cause, shall adjudge and determine the proportionate amount of such cost of adjudication, to be paid by each of the parties of said action; and the respective sums so apportioned are hereby declared to be a lien upon the lands and water rights of the said parties, and the said respective sums shall be entered by the auditors of the proper counties upon the assessment roll of the county in which the property is situated opposite the names of the parties respectively required to pay the same, and said sums shall be collected in the same manner and at the same time as other taxes are collected, and shall be placed in a separate fund, to be remitted to the state treasurer at the same time that other taxes are remitted and be placed by said treasurer in the 'adjudication of water rights fund.' "

The language quoted purports to establish a permanent fund to be known as the "adjudication of water rights fund." This law appears in the Compiled Laws of 1917, § 3425, without amendment or alteration. It continued in force until the enactment of chapter 67, Laws of 1919, when it was expressly repealed and nothing of a similar nature enacted instead. If that act had been in force when plaintiff here applied to the defendant for an order assessing the costs, the refusal of which is the ground for this proceeding, the order would undoubtedly have been granted and judgment entered for costs. But, as before stated, the act was repealed and nothing of a similar nature enacted in its stead, and, by every rule of construction with which we are familiar, applicable to the situation, we are forced to the conclusion that the Legislature of 1919 intended to abrogate the provisions authorizing the the assessment of costs against the users of water in cases

of this kind. Even if it be conceded that the failure of the Legislature to continue the law in force was due to mistake or inadvertence this court is powerless to correct the mistake. But notwithstanding the continued use of the term, "Revolving Fund," as appears in the appropriation bills to which we have referred, there is another feature in the conduct of subsequent Legislatures which tends to show that the repeal of the statute of 1911 and the failure to enact another of a similar nature was deliberate and intentional. Our attention is called to the fact that in the legislative session of 1925 a bill containing the following provisions was passed by the House but rejected by the Senate:

"Sec. 32X. The cost of preparing the proposed determination of water rights that shall hereafter accrue shall be paid from the state engineer's revolving fund and shall be charged as court costs against all of the parties on such a schedule as the court may direct at any time after the proposed determination of the state engineer shall be filed in court. The court may at its discretion provide for the payment of such costs in installments; provided that all such payments shall be made not later than six months after judgment has been rendered. Any person failing to pay his portion of the costs of formulating the proposed determination may be prohibited by the court from using water while such portion shall remain unpaid.

"Money repaid into the revolving fund by the parties to a suit shall remain in such fund and shall be used for the adjudication of rights on other streams. Whenever there shall be more money in the revolving fund than is necessary for the adjudication of streams during the remainder of the biennium, the state engineer may cause the excess to be covered in the same fund."

It also appears that in the legislative session of 1927 a bill containing the following provisions was passed by the Senate and rejected by the House:

"Sec. 61. The court shall enter judgment which shall determine and establish the rights of the several claimants to the use of the water of the river system or water source as provided in sec. 59 of this act, and shall, at the same time, enter an order assessing the costs of said determination against the several claimants in proportion to the rights awarded to each by the judgment, and the state

engineer shall withhold a distribution of any water to any of said claimants who fail to pay said cost within sixty days after notice of the amount due has been served upon such claimants by the state engineer, or the state engineer may start suit for the collection of any unpaid assessment costs of such determination. Such service to be made either personally or by registered mail."

It thus appears that neither of the bills became a law, and the inevitable conclusion is that the Legislature did not deem it expedient or proper in such cases to tax the costs of litigation against the water users and consequently there is no law authorizing the taxing of such costs.

No authorities have been called to our attention as to the general law relating to costs. Our independent investigation of the question leads us to the conclusion that "costs" of litigation, as that term is understood by the profession and the courts is largely, if not entirely, a subject of legislation.

In 7 R. C. L. at page 780, it is said:

"Costs are statutory allowances to a party to an action for his expenses incurred in the action and have reference only to the parties and the amounts paid by them, or as otherwise defined, they are the sums prescribed by law as charges for the services enumerated in the fee bills."

In 2 Words and Phrases, First Series, at page 1633, we find the following definition of costs:

" 'Costs' are certain allowances authorized by statute to reimburse the successful party for expenses incurred in prosecuting or defending an action or special proceeding."

" 'Costs' are the statutory allowance to a party to an action for his expenses in conducting such action."

" 'Costs are only recoverable by force of a statute, and the allowance of them in any case will depend on the terms of the statute.' In taxing costs, the only charges which can be allowed are those specifically provided for in the fee bill, and are not to be increased or diminished at the discretion of the court."

On page 1634, same volume, it is said:

" 'Costs' are expenses necessarily incurred in a suit in a court of justice. At common law costs were unknown. Costs are altogether the creature of statute."

Even if it were conceded that a court of equity has the innate power to adjudge costs in a case tried before it, the writ applied for here would have to be denied, for certainly, in the absence of a statute providing otherwise, the matter of costs and the adjustment thereof would be largely in the discretion of the court. The court would not be compelled to award them as prayed for by either party to the litigation.

Defendant's counsel, both in their oral arguments and in their briefs filed in the case, express the view that the fundamental reason for this policy of the Legislature denying costs in such cases is the fact that the primary purpose of the act, chapter 67, is to ascertain and conserve the unappropriated waters of the state for the use of future settlers; that for such purpose the state has a vital interest in the subject-matter of such cases and is declared by the statute to be a necessary party thereto. For this reason more than any other it is contended the state has assumed the burden of paying the costs of such litigation. There is much force in such contention. It is, however, unnecessary for the court to hold that such is the primary purpose of the act. It is sufficient to say that we find no statute of the state authorizing the assessment of costs against the water users in cases adjudicated in pursuance of chapter 67, Laws of 1919.

For the reasons stated, the alternative writ of mandate is quashed and a peremptory writ denied.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.